IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIANNE PIVIROTTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 16-1035 |
| v. | ) | |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| UNITED STATES OF AMERICA and, | ) | |
| BARYLNN CORPORATION, | ) | |
| | ) | ECF No. 35 |
| Defendants. | ) | |

**OPINION**

LENIHAN, M.J.

Currently before the Court for disposition is Defendant United States of America's Motion for Summary Judgment pursuant to FED. R. CIV. P. 56. (ECF No. 35). In this action under the Federal Tort Claims Act ("FTCA"), Plaintiff Marianne Pivirotto ("Pivirotto") asserts that she slipped and fell as a result of ice on November 22, 2014, on the sidewalk directly outside of the main entrance to the United States Post Office located at 395 Federal Street, Pittsburgh, PA better known as the Allegheny Station Postal Facility (hereinafter "Allegheny Station" or "post office"). Pivirotto claims she sustained bruising and had to have her arm surgically repaired as a result of her fall. She asserts claims for negligence under the FTCA against the United States for medical expenses; pain and suffering; attorneys' fees; costs; and seeks compensation for all other reasonable costs incurred. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1346.

For the reasons set forth below, the Court will grant Defendant's motion for summary judgment.

1

I. **PROCEDURAL HISTORY**

In an administrative tort claim dated October 13, 2015, Pivirotto requested $500,000 in damage from the Postal Service. (ECF Nos. 37 ¶ 44; 44 ¶ 44). The Postal Service denied Pivirotto's administrative tort claim, determining that "an investigation of this matter failed to establish a negligent act or omission on the part of the U.S. Postal Service or its employees." (ECF Nos. 37 ¶ 45; 44 ¶ 45).

On July 13, 2016, Pivirotto filed a complaint naming the United States and Barlynn Corporation as defendants. (ECF No. 1). On November 7, 2016, in accordance with 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct all further proceedings in the case. (ECF No. 22). On July 7, 2017, Barlynn Corporation was dismissed with prejudice by the parties' joint stipulation of voluntary dismissal. (ECF No. 42).

On June 16, 2017, the United States filed a motion for summary judgment, (ECF No. 35); brief in support thereof, (ECF No. 36); and a concise statement of material facts, (ECF No. 37). Pivirotto filed her response to the motion for summary judgment, (ECF No. 43); a reply in opposition to the concise statement of material facts, (ECF No. 44); a reply and counterstatement to the concise statement of material facts, (ECF No. 45); and a brief in opposition to the motion for summary judgment, (ECF No. 47). On July 25, 2017, the United States filed a reply brief, (ECF No. 49), and a response to Pivirotto's counterstatement of undisputed facts, (ECF No. 48).

II. **RELEVANT FACTS**

At daybreak on November 22, 2014, there was no natural accumulation of snow/ice on the ground in Pittsburgh, Pennsylvania. (ECF Nos. 37 ¶ 6; 44 ¶ 6). Pivirotto awoke at approximately 7:00 a.m. and walked out of her house and down the street to mail her bills. (ECF Nos. 45 ¶ 1; 48 ¶ 1). She testified that at that time, there was a light mist but no rain or ice. (ECF Nos. 45 ¶ 1; 48

¶ 1).[1] Pivirotto went outside again at approximately 10:00 a.m., to feed the birds and, this time, she noticed no mist, rain, or ice. (ECF Nos. 45 ¶ 2; 48 ¶ 2). Pivirotto testified that she was aware that an ice storm was forecast for that morning and that there was, in fact, a freezing rain advisory in effect for Allegheny County until 2:00 p.m. (ECF Nos. 37 ¶¶ 7, 8; 44 ¶¶ 7, 8). The National Weather Service issues a freezing rain advisory if "light ice accumulation (freezing rain and/or freezing drizzle) is expected but will not reach warning criteria." (ECF Nos. 37 ¶ 9; 44 ¶ 9). The National Weather Service advised to "Expect a glaze on roads resulting in hazardous travel. Slow down and use caution while driving because even trace amounts of ice can be dangerous." (ECF Nos. 37 ¶ 9; 44 ¶ 9).

Christopher Pierce ("Pierce"), the acting manager of the Allegheny Station arrived at work at approximately 4:00 a.m. on November 22, 2014. (ECF No. 45, ¶ 8; 48 ¶ 8). From the time of his arrival until the time he left, around 10:00 a.m., Pierce did not notice and was not told of any adverse weather conditions. (ECF No. 46-2 at 35). Shortly after Pierce left the Allegheny Station, at approximately 10:10 a.m., he hit a slick patch on the roadway and decided to call the post office to instruct them to spread salt. (ECF Nos. 39 ¶ 12; 45 ¶ 9; 44 ¶ 12; 48 ¶ 9). Thomas Ingold ("Ingold"), who was the acting supervisor of the Allegheny Station, answered the phone. (ECF Nos. 45, ¶ 10; 48 ¶ 10). Ingold had arrived at work at approximately 7:00 a.m. and had not noticed and was not told of any adverse weather conditions prior to Pierce's phone call with him. (ECF Nos. 45 ¶ 11; 46-3 at 9-11; 48 ¶ 11).

---

[1] Pivorotto's Counterstatement of Undisputed Material Facts in Opposition to Defendant United States' Motion for Summary Judgment has two paragraph number ones, twos, threes, fours, fives, and sixes. Each of the paragraphs referenced in the Relevant Facts section refers to the second of these paragraphs.

John Harmon ("Harmon"), Allegheny Station's maintenance person, is typically responsible for salting the walkways; however, on the weekend, the post office's supervisors are responsible for salting.[2] (ECF Nos. 37 ¶ 15; 44 ¶ 15). The post office is open to the public only on Saturdays between 10:00 a.m. and 12:00 p.m. (ECF No. 46-2, 15). Typically, very few customers come to the post office on Saturday. (ECF Nos. 37 ¶ 16; 44 ¶ 16).

Salt is stored in a locked area and Harmon is responsible for knowing where the keys for the lock are at all times – he is to either have them on his person and bring them down to the post office when called or he is to hide them somewhere at the post office. ECF Nos. 45 ¶ 12, 46-2 at 11-12, 24; 46-3 at 10; 48 ¶ 12). The day Pivirotto fell, the keys were hidden at the post office. (ECF Nos. 45 ¶ 12, 46-2 at 11-12, 24; 46-3 at 10; 48 ¶ 12). When Ingold called Harmon, on November 22, 2014, to find out where the keys were, Harmon did not immediately answer his telephone; however, Harmon did call back a few minutes later. (ECF No. 45, ¶ 13; 48 ¶ 13).

At approximately 11:00 a.m., Pivirotto left her home with her daughter and grandson for the 1.5-mile commute to the post office. (ECF Nos. 45 ¶ 3; 48 ¶ 3).[3] The Allegheny Station is a five minute drive from Pivirotto's house. (ECF Nos. 37 ¶ 28; 44 ¶ 28). At no point during the drive did Pivirotto's daughter use her windshield wipers or experience any difficulty navigating the roads. (ECF Nos. 45 ¶ 3; 48 ¶ 3). Shortly after 11:00 a.m., Pivirotto arrived at the post office. (ECF Nos. 45 ¶ 4; 48 ¶ 4).[4]

---

[2] Pierce also discussed that the post office had a contract with a snow removal company. (ECF No. 46-2 at 8).

[3] United States objects on the basis of Pivirotto's use of "approximately 11:00 a.m." rather than "around 11:00 a.m." as Pivirotto testified in her deposition. (ECF No. 48 ¶ 3).

[4] Defendant argues because Pivirotto testified that she left her home "around 11:00" her arrival at the Post Office could have been several minutes prior to 11:00 a.m. on the morning in question. (ECF No. 48 ¶ 4).

Pivirotto's daughter let her out at the post office's lot's entrance, and Pivirotto walked towards the main entrance to pick up a package for her son-in-law. (ECF Nos. 45 ¶ 4; 46-1 at 19; 48 ¶ 4). Pivirotto slipped and fell directly in front of the main entrance. (ECF Nos. 45 ¶ 5; 48 ¶ 5). She immediately experienced intense pain. (ECF Nos. 45 ¶ 5; 48 ¶ 5). After she had fallen, she noticed a patch of ice on the walkway that was wavy and ripply and about a quarter inch thick. (ECF No. 37 ¶ 37; 44 ¶ 37). In her declaration, Pivirotto explained

> I could not get up right away and as I sat I was able to see what made me fall. I had fallen on a patch of ice that was right under the dripline/ roof line of the post office. The ice was bumpy and wavy. There seemed to be one layer at the bottom and then another layer of ice pellets and then a third layer of clear ice that covered the ice pellets. The covered ice pellets made lumps throughout the patch on which I fell. The bumps in the ice were the size of small marbles. The ice was solid without any water underneath the ice.

(ECF No. 46-5 ¶ 8). Pivirotto testified that the only ice she encountered walking into the Allegheny Station was the ice that caused her to fall. (ECF Nos. 37 ¶ 31; 44 ¶ 31). At the time of her fall, the freezing rain had ended. (ECF Nos. 37 ¶ 34; 44 ¶ 34). At least two customers reported slippery conditions before Pivirotto's fall. (ECF No. 38-9).

Ingold was able to find the key. (ECF Nos. 45 ¶ 15; 48 ¶ 15). Around 10:30, Ingold began salting the ramp for the carriers and then proceeded toward the front sidewalk to salt. (ECF Nos. 37 ¶ 21; 44 ¶ 21; 46-3 at 10-11). As he exited through the double doors at the front of the Allegheny Station, Ingold encountered Pivirotto, who had just fallen, walking into the post office. (ECF Nos. 37 ¶ 23; 44 ¶ 23). Pivirotto argues that Ingold did not begin to salt the Federal Street sidewalk until approximately an hour after his supervisor had instructed him to do so. (ECF No. 47 at 7).

Ingold directed Postal Clerk Matt Masur to call 911. (ECF Nos. 37 ¶ 24; 44 ¶ 24). Ingold then proceeded outside to salt the front sidewalk, while Pivirotto sat inside waiting for an

5

ambulance. (ECF Nos. 37 ¶ 25, 44 ¶ 25). Ingold indicated that when he walked outside in the front of the building to spread salt, he "couldn't really see" ice but it was "slick". (ECF Nos. 37 ¶ 26; 44 ¶ 26).

Pivirotto's daughter arrived from the parking lot and sat with her. (ECF Nos. 37, ¶ 39; 44 ¶ 39). Pivirotto's daughter picked up the package from the window clerk at approximately 11:07 a.m. (ECF Nos. 37 ¶ 40; 44 ¶ 40). The ambulance arrived at 11:18 a.m. and took Pivirotto to the emergency room. (ECF Nos. 37 ¶ 41; 43 ¶ 41). Pivirotto was diagnosed with a "[l]eft open distal radius fracture" and had surgery to repair the fracture later that same day. (ECF Nos. 37 ¶ 42; 43 ¶ 42).

At no point did anyone at the Allegheny Station place a caution sign near the ice patch. (ECF Nos. 45 ¶ 17; 48 ¶ 17). Indeed, Ingold was not aware of any caution signs that could be used outside. (ECF Nos. 45 ¶ 17; 48 ¶ 17).

According to the National Oceanic & Atmospheric Administration, on November 22, 2014, there was freezing rain at Pittsburgh's International Airport at 9:31 a.m., 10:21 a.m., and 10:51 a.m. (ECF No. 88-5). There was no freezing rain reported at 9:40 a.m. or 9:51 a.m. (*Id.*) The United States' Expert, Dick Mancini, a certified consulting meteorologist, explained that in his expert opinion, there was no accumulation of either snow or ice at daybreak on November 22, but because freezing rain began around 9:30 a.m. in Pittsburgh with temperatures in the upper 20s near 30, the freezing rain would have taken awhile to cause a sidewalk to reach a slippery level and even then would have only been slippery in isolated spots. (ECF No. 38-2).

## II. LEGAL STANDARD – SUMMARY JUDGMENT

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, the pleadings, documents, electronically stored information, depositions, answers to

6

interrogatories and admissions on file, together with any affidavits or declarations, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (a) & (c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non- movant's burden of proof. *Id.* Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242, 248 (1986). In *Anderson*, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249-50 (internal citations omitted).

### III. ARGUMENTS

The United States argues that Pivirotto cannot prove negligence under the hills and ridges doctrine because there was not a sizable or substantial obstruction of snow and the United States acted within a reasonable amount of time. Alternatively, the United States argues Pivirotto cannot

7

prove negligence under traditional tort principles because the United States exercised reasonable care in addressing the condition of the sidewalk. Pivirotto, conversely, argues that because she fell on an isolated patch of ice under a dripline, there were not generally slippery conditions in the community and the hills and ridges doctrine does not apply. Additionally, she argues that because she fell on ice that consisted of hills and ridges, the doctrine does not apply. Applying ordinary negligence principles, Pivirotto argues that the United States failed to exercise reasonable care. The United States responds that Pivirotto has not sufficiently developed the facts surrounding the dripline, her description of the ice is not sufficient to constitute a substantial obstruction, and that it took reasonable actions to safeguard the icy conditions around the post office by immediately acting after receiving notice of the slippery conditions.

## IV. DISCUSSION

### Federal Tort Claims Act

As a general rule, the United States has sovereign immunity; however, in enacting the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671 *et seq.*, Congress has chosen to waive the United States' sovereign immunity in limited situations set forth in the Act. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218 (2008); *Dupont v. United States*, 197 F.Supp.3d 678 (D. N.J. 2016) (citing *United States v. Orleans*, 425 U.S. 807, 813 (1976)). Specifically, the FTCA waives government immunity for claims for money damages for personal injuries relating caused by the government's negligence. 28 U.S.C. § 1346(b)(1), 2674. The location where the purported act or omission occurred is the law that is to be applied. §§ 1346(b)(1), 2674. The post office where the injury is alleged to have occurred is in Pennsylvania; thus, Pennsylvania law applies.

### Pennsylvania Negligence Law

To establish a claim for negligence under Pennsylvania law, the plaintiff must demonstrate that the defendant "owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009). A possessor of land is subject to liability to an invitee where

> "[the land possessor] knows of or reasonably should have known of the condition and the condition involves an unreasonable risk of harm, [the possessor] should expect that the invitee will not realize it or will fail to protect [himself] against it, and the [possessor] fails to exercise reasonable care to protect the invitee against the danger."

*Collins v. Phila. Suburban Dev. Corp.*, __ A.3d __, 2018 WL 627229, at *4 (Pa. Super. Jan. 31, 2018) (quoting *Estate of Swift v. Ne. Hosp. of Phila.*, 690 A.2d 719, 722 (Pa. Super. 1997) (alteration in original). Pennsylvania follows the Restatement Second of Torts formulation as to liability to an invitee, which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343; *see Harris v. Fed. Bureau of Prisons*, C.A. 16-CV-49 ERIE, 2017 WL 2840287, at *3 (W.D. Pa. June 30, 2017). However,

> the "mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition[,] is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence."

*Neifert v. Speedway LLC*, Civ. Act. No. 1891 MDA 2016, 2017 WL 4052264, at *3 (Pa. Super. Sept. 14, 2017) (quoting *Myers v. Penn Traffic Co.*, 606 A.2d 926, 928 (Pa. Super. 1992)) (en banc).

9

Given the climatic conditions in this hemisphere, "to require that one's walks be always free of ice and snow would be to impose an impossible burden." *Harmotta v. Bender*, 601 A.2d 837, 841 (Pa. Super. 1992); *see Mitchell v. Dep't of Corrections*, Civil Act. No. 1844 C.D. 2016, 2017 WL 3623508, at *2 (Pa. Commw. Ct. Aug. 24, 2017). Where, however, the harmful condition is snow or ice, Pennsylvania's hills and ridges doctrine may define the duty a possessor of land owes to the invitee. *Collins*, 2018 WL 627229, at *4. The hills and ridges doctrine applies only where there is an "entirely natural" accumulation of snow. *Id*. The hills and ridges doctrine:

> protects an owner or occupier of land from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations. . . . . In order to recover for a fall on an ice or snow covered surface, . . . a plaintiff is required to prove: (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

*Morin v. Traveler's Rest Motel, Inc.*, 704 A.2d 1085, 1088 (Pa. Super. 1997) (internal citation and quotation omitted); *see Neifert*, 2017 WL 4052264, at *3. "A plaintiff must establish all factual elements of the [hills and ridges] doctrine in order to recover" where there are general slippery conditions resulting from ice and snow in the community. *Mangual v. DIA-Wesley Drive, Inc.*, Civil Act. No. 1:13–CV–00071, 2014 WL 2511281, at *5 (M.D. Pa. June 4, 2014). The possessor of land owes a duty to remove or treat snow or ice "within a reasonable time after notice to remove [the snow and ice] when it is in a dangerous condition." *Collins*, __ A.3d __, 2018 WL 627229, at *4 (quoting *Biernacki v. Presque Isle Condominiums Unit Owners Ass'n, Inc.*, 828 A.2d 1114, 1117 (Pa. Super. 2003)) (alteration in original).

Two exceptions to the hills and ridges doctrine are: (1) "when conditions in the community are not generally slippery" and (2) "when an icy condition is caused by the defendant's neglect."

*Mason v. Brandywine Constr. & Mgmt., Inc.*, Civil Act. No. 15-6635, 2017 WL 1150625, at *4 (E.D. Pa. Mar. 27, 2017) (internal citation and quotation omitted).

### A. <u>General Slippery Conditions</u>

General slippery conditions existed in the community at the time of Pivirotto's fall. On November 22, 2018, Allegheny County was under a freezing rain advisory; freezing rain was reported at the Pittsburgh International Airport beginning around 9:31 a.m.; the temperature was in the upper 20s near 30, which is below freezing; Pierce encountered slippery conditions on his way home at approximately 10:10 a.m., Pivirotto reported mist at her home, and at least two people reported slippery conditions outside of the post office that morning. Pivirotto appears to argue that because she only slipped on a single patch of ice directly outside of the post office that it was a localized patch and, thus, would preclude a jury from finding that there were general slippery conditions in the community. This misinterprets Pennsylvania law as stated in *Neifert v. Speedway LLC*. For general slippery conditions to exist in the community, it is not required that the whole property be covered in ice or snow but rather that there was some sort of precipitation (mist or otherwise) which froze when it hit the ground that could have caused icy patches throughout the community. *Neifert*, 2017 WL 4052264, at *4. Thus, the fact that Pivirotto fell on an icy patch is not dispositive. Because reading the evidence in the light most favorable to Pivirotto, a reasonable jury would have to find that general slippery conditions existed in the community, this exception to the hills and ridges doctrine is inapplicable.

### B. <u>Neglect/ unnatural accumulation of snow</u>

Pivirotto also argues that the dripline contributed to the ice accumulation, which caused her fall. If a reasonable jury can find that the dripline contributed to the icy conditions, the hills and ridges doctrine does not apply because the snow accumulation would not be an entirely natural

snow accumulation and would fall within the neglect exception to the hills and ridges doctrine. *See Mason*, 2017 WL 1150625, at *4-5. The only evidence that Pivirotto has proffered to suggest that the dripline caused her fall is that she noticed the presence of a dripline after she had fallen. She has failed to proffer evidence as to how the dripline impacted the sidewalk upon which she fell. Indeed, the dripline is not even visible in the pictures that were introduced as exhibits.[5] Given that discovery is closed, a jury would have to speculate as to the effect of the dripline. Thus, the mere presence of a dripline is insufficient evidence from which a reasonable jury could find that the ice on the sidewalk was not the result of natural accumulation but rather a result of neglect.

### C. <u>Applicability of the Hills and Ridges Doctrine</u>

Because neither of the two exceptions are applicable, the hills and ridges doctrine will apply unless the plaintiff can demonstrate a reasonable jury could find that that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; that the property owner had notice of the existence of such condition; and that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall. The facts are undisputed that the United States had actual notice about the presence of ice on the sidewalk. Pivirotto, however, has failed to allege sufficient facts to demonstrate that the ice had accumulated in ridges or elevations of such a size and character to unreasonably obstruct travel. In order to vitiate the hills and ridges doctrine,

> "[t]he ridge must be shown to be of such substantial size and character as to be a danger to the public, not a mere uneven surface caused by walking upon the ice. The proof must describe the alleged ridge as to size and character, and be such as to support a finding that it was a substantial obstruction to travel."

---

[5] This case is unlike *Mason v. Brandywine Construction & Management* where the plaintiff had offered evidence that ice accumulated in the same spot on the sidewalk nearly every day after his fall, the water from the downspout followed onto the area of the sidewalk where the plaintiff had slipped and the defendants were responsible for maintaining the drains. 2017 WL 1150625, at *4-5.

12

*O'Donnell v. Cogo's Co.*, Civil Act. No. 39 WDA 2014, 2014 WL 10752204, *4 (Pa. Super. Dec. 3, 2014) (quoting *Rinaldi v. Levine*, 176 A.2d 623, 626 (Pa. 1962)). The Supreme Court of Pennsylvania explained in that landmark case of *Rinadi v. Levine*, what constitutes a significant obstruction. 176 A.2d at 626. Specifically, the Pennsylvania Supreme Court provided:

> All that Rinaldi proved was that the sidewalk was icy and, in places, "bumpy", "lumpy" or "hilly" and covered at the time of the accident with a layer of freshly fallen snow. The record is void of any evidence of the size or character of the ridges, bumps, lumps, hills or other elevations of the snow or ice such as would constitute an obstruction or danger to the travelling public. In short, his proof merely demonstrated an unevenness of the surface of the snow and ice such as would result from persons walking over the snow on the sidewalk; such proof is not proof of negligence.

*Id.* Thus, ice an inch thick and a little bumpy in some parts is insufficient as a matter of law to prevent the hills and ridges doctrine from applying. *Mack v. AAA Mid-Atlantic Inc.*, 511 F.Supp.2d 539, 548 (E.D. Pa. 2007); *see Colihan v. United States Postal Serv.*, Civ. Act. No. 96-CV-516, 1997 WL 141867, at *3 (E.D. Pa. Mar. 25, 1997) (finding no unreasonable obstruction where the ice was "about 1/4" thick, and that [icy] portions covered about 20% of the sidewalk"). Here, Pivirotto has provided two separate descriptions of the ice that she contends caused her to fall.

In her declaration, Pivirotto explained

> I could not get up right away and as I sat I was able to see what made me fall. I had fallen on a patch of ice that was right under the dripline/ roof line of the post office. The ice was bumpy and wavy. There seemed to be one layer at the bottom and then another layer of ice pellets and then a third layer of clear ice that covered the ice pellets. The covered ice pellets made lumps throughout the patch on which I fell. The bumps in the ice were the size of small marbles. The ice was solid without any water underneath the ice.

(ECF No. 46-5, ¶ 8). In her deposition, Pivirotto explained that the ice she encountered was thick and wavy and a quarter of an inch thick. (ECF No. 37 ¶ 37; 44 ¶ 37). Based on the standard set

13

forth in *Rinaldi*, neither of those descriptions are sufficient as a matter of law to be a substantial obstruction.

### D. Reasonable amount of time

Because the hills and ridges doctrine applies, the only duty the post office had was to clear the ice within a reasonable amount of time. *See Moon*, 129 A.3d at 23. The Superior Court of Pennsylvania recently addressed what constitutes a reasonable amount of time in *Collins v. Philadelphia Suburban Development Corp*, 2018 WL 627229, at *6. The Superior Court explained that there is no duty to clear snow or ice while a snowstorm is in progress or immediately after the storm. *Id.* at *6. In making its determination the Superior Court cited *Biernacki v. Presque Isle Condominiums Unit Owners Association, Inc.*, 828 A.2d 1114, 1116 (Pa. Super 2003), which provided that snow did not need to be removed even by the next morning after a snowfall and *Morin v. Traveler's Rest Motel, Inc.*, 704 A.2d 1085 (Pa. Super. 1997), which explained that a landowner "has no duty to salt or sand a parking lot during/immediately after an ice storm." *Id.* at *5-6. Additionally, the Superior Court of Pennsylvania in *O'Donnell v. Cogo's Co.*, No. 39 WDA 2014, 2014 WL 10752204, *1, 3 (Pa. Super. Dec. 3, 2014), found that a reasonable amount of time had not yet passed to treat ice where the plaintiff had fallen 5.5 hours after the mixed perception ended. The parties agree that the storm had ended by the time Pivirotto had fallen. However, the storm had started no more than two hours before Pivorotto's fall. Moreover, when the post office found out about the slippery conditions, it took immediate steps to resolve the problem. Accordingly, a reasonable jury could not find that the United States had not acted within a reasonable amount of time.

### E. Duty to Warn

Finally, Pivirotto argues that the United States had a duty to warn. Pennsylvania law is clear that where a plaintiff was aware of possible slippery conditions there is no duty to warn and that there is also no duty to warn where there is no duty under the hills and ridges doctrine. *Morin*, 704 A.2d at 1089 n.3; *see also Helbing v. Wyndham Hotels & Resorts*, Civil No. 1:CV–10–1117, 2011 WL 601274, at *4 (M.D. Pa. Feb. 11, 2011) (explaining "the hills and ridges doctrine bars any reliance on a failure to warn"). Therefore, because the United States had no duty under the hills and ridges doctrine, it had no duty to warn Pivirotto of the icy conditions. Additionally, Pivirotto testified that she was aware that the roads and sidewalks could be treacherous. In fact, she testified that she encountered mist at 7:00 a.m. while walking down the street to mail her bills and was aware of the freezing rain advisory. Accordingly, the United States owed Pivirotto no duty to warn.

## V. CONCLUSION

For the reasons set forth above, the Court finds that no genuine issues of material fact exist, and that Defendant is entitled to judgment as a matter of law as to all claims. Therefore, the Court will grant Defendant's Motion for Summary Judgment in its entirety.

An appropriate order will follow.

Dated: February 20, 2018    BY THE COURT:

　　/s/ Lisa Pupo Lenihan　　　　
LISA PUPO LENIHAN
United States Magistrate Judge

cc:　All Counsel of Record
　　*Via Electronic Mail*

15